**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE**

| | | |
|---|---|---|
| BRITTANY VALDEZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:19-cv-30 |
| | ) | |
| YOUTH OPPORTUNITY | ) | |
| INVESTMENTS, LLC, d/b/a ROANE | ) | |
| ACADEMY, | ) | |
| | ) | |
| Defendant. | ) | |

---

## ANSWER
---

Defendant Youth Opportunity Investments, LLC, d/b/a Roane Academy ("YOI") answers the Complaint and asserts affirmative defenses, as follows:

### FIRST DEFENSE

The Complaint fails to state a claim upon which relief may be granted.

### SECOND DEFENSE

Plaintiff's claims under 42 U.S.C. §2000e *et seq.* are barred by the limitations period set forth in 42 U.S.C. §2000e-5(e) (1), to the extent that they are based on discreet acts of alleged discrimination that occurred more than 300 days before Plaintiff filed his charge with the Equal Employment Opportunity Commission.

### THIRD DEFENSE

Plaintiff's' claims under 42 U.S.C. §2000e *et seq.* are barred to the extent that they are based upon discreet acts of alleged discrimination that were not asserted in a timely EEOC charge.

## FOURTH DEFENSE

To the extent that Plaintiff is able to state a claim for relief, she cannot establish actual or punitive damages and can only recover nominal damages, if any.

## FIFTH DEFENSE

To the extent Plaintiff seeks punitive damages, YOI relies upon the protection of excessive fines, cruel and unusual punishment, denial of due process and denial of equal protection of the laws in the Constitution of the United States.

## SIXTH DEFENSE

In response to the numbered paragraphs of the Complaint, YOI states as follows:

1. The Plaintiff, Brittany Valdez, is a citizen and resident of Rockwood, Roane County, Tennessee.

**RESPONSE:** YOI admits upon information and belief that the allegations in Paragraph 1 as to Plaintiff's residence.

2. The Defendant, Youth Opportunity Investments, LLC, d/b/a Roane Academy, is a for-profit limited liability company organized in the State of Indiana and authorized to do business in the State of Tennessee, and Defendant's principal office location in Tennessee is 100 Woodland St., Nashville, TN 37213-1215, and Defendant's principal office location in Indiana is 12775 Horseferry Road, Suite 230, Carmel, IN 46032 and may be served through its Registered Agent, Ronald D. Hunter, at the same address.

**RESPONSE:** YOI admits the allegations in Paragraph 2.

3. The Defendant is an employer subject to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.,* and the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

**RESPONSE:** YOI admits that it is an employer within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, et seq., and the Civil Rights Act of 1991, 42 U.S.C. §1981a, but denies that it is liable under any of its provisions as alleged in the Complaint.

4. The Defendant is an employer subject to the provisions of the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101, *et seq.*

**RESPONSE:** YOI admits that it is an employer subject to the provisions of the

Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101, et. seq., but denies that it is liable

under any of its provisions as alleged in the Complaint.

5.     Jurisdiction is founded upon 28 U.S.C. § 1331 over Plaintiff's claims pursuant to 42 U.S.C. § 2000e, *et seq.,* and 42 U.S.C. § 1981a, and the doctrine of Supplemental Jurisdiction, 28 U.S.C. §1367.

**RESPONSE:** YOI admits the jurisdictional allegations in Paragraph 5.

6.     Venue is proper under the code provisions cited herein, and 28 U.S.C. § 1391(b) and (c).

**RESPONSE:** YOI admits the venue allegations of Paragraph 6.

7.     At all times stated herein, the Defendant is an employer engaging in an industry affecting commerce and employed more twenty (20) employees.

**RESPONSE:** YOI admits the allegations of Paragraph 7.

8.     At all times material hereto, the Defendant receives funding from the State of Tennessee for providing therapy services and care to the residents at Roane Academy.

**RESPONSE:** YOI admits the allegations of Paragraph 8.

9.     At all times material hereto, the Defendant's location at Roane Academy in Rockwood, Tennessee, was approved by the Tennessee Department of Children's Services ("DCS") as a facility to provide care for juvenile-residents classified as requiring Level 3 services, and DCS relied on Defendant to identify the level of care needed for each resident.

**RESPONSE:** YOI admits the allegations in Paragraph 9.

10.     At all times stated herein, the Plaintiff worked at Defendant's Roane Academy facility located at 503 Cardiff Valley Road, Rockwood, Tennessee 37854.

**RESPONSE:** YOI admits that Plaintiff was employed by YOI from October 17, 2016

through March 23, 2018. Plaintiff was suspended without pay on January 22, 2018, pending an

investigation into an allegation made against her of being inappropriate with a client, and entering

the client's dormitory and room contrary to previous directives.

11.     The Plaintiff is female.

**RESPONSE:** YOI admits the allegations in Paragraph 11.

12.     In October of 2016, the Plaintiff was originally hired by the Defendant's predecessor, Omni Visions, Inc. d/b/a Roane Academy.

**RESPONSE:** YOI admits the allegations in Paragraph 12.

13.     In November of 2017, the Defendant began operating the Roane Academy facility, and the Plaintiff became an employee of Defendant at that time.

**RESPONSE:** YOI admits the allegations in Paragraph 13.

14.     In November of 2017, up through the date of her termination, the Plaintiff was employed by Defendant as a Youth Counselor.

**RESPONSE:** Denied.

15.     During her employment with Defendant, the Plaintiff was qualified for the position of Youth Counselor.

**RESPONSE:** Denied.

16.     During her employment with Defendant, the Plaintiff performed her Youth Counselor job duties in a competent and satisfactory manner.

**RESPONSE:** Denied.

17.     In October of 2017, the Plaintiff was cross-trained to work in the security unit, "Master Control".

**RESPONSE:** YOI admits the allegations in Paragraph 17.

18.     Cross-training the Plaintiff to work in Master Control was considered a promotion because it was a job Plaintiff wanted and she could work more hours.

**RESPONSE:** YOI is without sufficient information to form an opinion as to the allegation

in Paragraph 18, and accordingly denies the same and demands strict proof thereof.

19.     From October of 2017, forward, the Plaintiff was qualified to work in Master Control.

**RESPONSE:** Denied.

20.     From October of 2017, forward, the Plaintiff performed her job duties in Master Control in a competent and satisfactory manner.

**RESPONSE:** Denied.

21.     In December of 2017, the Plaintiff was again cross-trained to work in the kitchen as a Cook.

**RESPONSE:** YOI admits the allegations in Paragraph 21.

22.     Cross-training the Plaintiff to work in the kitchen was considered a promotion because it was a job Plaintiff wanted and her schedule was more flexible.

**RESPONSE:** YOI is without sufficient information to admit or deny whether Plaintiff considered her work in the kitchen to be a promotion or whether she considered her schedule as a cook more flexible, and accordingly denies the allegations of Paragraph 22 and demands strict proof thereof.

23.     From December of 2017, forward, the Plaintiff was qualified to work in the kitchen as a Cook.

**RESPONSE:** Denied.

24.     From December of 2017, forward, the Plaintiff performed her job duties in the kitchen as a Cook in a competent and satisfactory manner.

**RESPONSE:** Denied.

25.     In December of 2017, when the Plaintiff worked in the kitchen, she initially reported to and was supervised by the Kitchen Manager at that time, Christina Horne.

**RESPONSE:** YOI admits the allegations in Paragraph 25.

26.     During Plaintiff's employment, Dan Williams was the Clinical Director of Roane Academy.

**RESPONSE:** YOI admits the allegations in Paragraph 26.

27.     As the Clinical Director, Dan Williams had supervisory authority over the Roane Academy facility.

**RESPONSE:** YOI admits the allegations in Paragraph 27.

28.     As the Clinical Director, Dan Williams was an agent and employee of the Defendant.

**RESPONSE:** YOI admits the allegations in Paragraph 28.

29.     As the Clinical Director, Dan Williams had the authority to discipline the Plaintiff.

**RESPONSE:** YOI admits the allegations in Paragraph 29.

30.     As the Clinical Director, Dan Williams had the authority to terminate the Plaintiff.

**RESPONSE:** YOI admits the allegations in Paragraph 30.

31.     During Plaintiff's employment, Lynn Murdock was the Business Manager of Roane Academy.

**RESPONSE:** YOI admits the allegations in Paragraph 31.

32.     As the Business Manager, Lynn Murdock had supervisory authority over the Roane Academy facility.

**RESPONSE:**  Denied.

33.     As the Business Manager, Lynn Murdock was an agent and employee of the Defendant.

**RESPONSE:**  Denied.

34.     As the Business Manager, Lynn Murdock had the authority to discipline the Plaintiff.

**RESPONSE:** Denied.

35.     As the Business Manager, Lynn Murdock had the authority to terminate the Plaintiff.

**RESPONSE:** Denied.

36.     At all times stated herein, Defendant's agents and employees were subject to the criminal statute for child abuse and child neglect or endangerment, as set forth in Tenn. Code Ann. § 39-15-401, et seq.

**RESPONSE:** The allegations in Paragraph 36 are a legal conclusion to which no response is required.

37.     At all times stated herein, Defendant's agents and employees were subject to the provisions of Mandatory Child Abuse Reporting, as set forth in Tenn. Code Ann. § 37-1-401, et seq.
     **RESPONSE:** The allegations in Paragraph 37 are a legal conclusion to which no response is required.

38.     At all times material hereto, the Defendant was subject to the "Child Care Agencies" provisions set forth in Tenn. Code Ann. § 37-5-501, et seq.

     **RESPONSE:** The allegations in Paragraph 38 are a legal conclusion to which no response is required.

39.     At all times stated herein, the Defendant was subject to the provisions set forth in the Rules and Regulations of DCS: Standards for Residential Child Caring Agencies, Chapter 0250-4-5-.01, et seq.

     **RESPONSE:** The allegations in Paragraph 39 are a legal conclusion to which no response is required.

40.     At all times material hereto, the Defendant was licensed by DCS as a Residential Child Care Agency.

     **RESPONSE:** YOI admits the allegations in Paragraph 40.

41.     Tennessee law requires mandatory reporting of sexual and/or inappropriate contact between staff and a minor at a facility such as Roane Academy.

     **RESPONSE:** The allegations in Paragraph 41 are a legal conclusion to which no response is required.

42.     Defendant's employees are required to obey the mandatory reporting requirements of Mandatory Child Abuse Reports pursuant to Tenn. Code Ann. § 37-1-401, *et seq.*

     **RESPONSE:** The allegations in Paragraph 42 are a legal conclusion to which no response is required.

43.     Defendant's employees are also required to obey the mandatory reporting requirements of DCS and its policies and procedures.

**RESPONSE:** The allegations in Paragraph 43 are a legal conclusion to which no

response is required.

44.     According to DCS policy, the Defendant is supposed to immediately report to DCS any allegations of sexual and/or inappropriate contact between staff and a minor at the facility.

**RESPONSE:** The allegations in Paragraph 44 are a legal conclusion to which no

response is required.

45.     According to DCS policy, the Defendant is then supposed to separately interview the staff and resident involved, and then complete a report regarding the allegations.

**RESPONSE:** The allegations in Paragraph 45 are a legal conclusion to which no

response is required.

46.     On or about January 6, 2018, a resident in the facility, "J.B." accused and complained that a male Youth Counselor inappropriately touched him.

**RESPONSE:**   For answer to Paragraph 46, YOI states that on or about January 6, 2018,

a facility resident, J.B., informed a YOI employee of an incident between J.B. and a male youth

counselor that had occurred six months prior.

47.     The Clinical Director, Dan Williams, was aware of and/or had knowledge that the resident, J.B., had complained and/or accused a male Youth Counselor of inappropriate contact.

**RESPONSE:**   YOI states that it has insufficient information to admit or deny the

allegations of Paragraph 47, and accordingly, the allegation is denied and strict proof is demanded

thereof.

48.     After these allegations came forward, the Clinical Director, Dan Williams, specifically instructed Lead Counselor, Jessie Greene, to not report the incident to DCS.

**RESPONSE:** Denied.

49.     After these allegations came forward, the involved male Youth Counselor was never suspended by the Defendant.

**RESPONSE:** YOI states that it has insufficient information to admit or deny the allegations of Paragraph 49, and accordingly, the allegation is denied and strict proof is demanded thereof.

50.     After these allegations came forward, the involved male Youth Counselor was never disciplined by the Defendant.

**RESPONSE:** YOI states that it has insufficient information to admit or deny the allegations of Paragraph 50, and accordingly, the same are denied and strict proof is demanded thereof.

51.     After these allegations came forward, the Defendant never reported the incident to DCS.

**RESPONSE:** YOI states that it has insufficient information to admit or deny the allegations of Paragraph 51, and accordingly, the allegation is denied and strict proof is demanded thereof.

52.     After these allegations came forward, the Defendant never reported the involved male Youth Counselor to DCS for an investigation.

**RESPONSE:** YOI states that it has insufficient information to admit or deny the allegations of Paragraph 52, and accordingly, the allegation is denied and strict proof is demanded thereof.

53.     It would be a violation of Tennessee and Federal law to not report to the proper authorities a resident's complaint about being inappropriately touched by an employee.

**RESPONSE:** The allegations in Paragraph 53 are a legal conclusion to which no response is required.

54.     On January 22, 2018, Plaintiff was abruptly suspended, without pay, by the Clinical Director, Dan Williams, and the Business Manager, L.J. Murdock.

**RESPONSE:** For answer to Paragraph 54, YOI admits that on January 22, 2018, Plaintiff was suspended without pay. Further answering, YOI states that Plaintiff was suspended because on January 17, 2018, Plaintiff was accused of being inappropriate with a client.  Plaintiff was

instructed to not go into the dormitory where the client housed, however, on January 21, 2018, Plaintiff was viewed on several occasions going into the dormitory and being alone in the client's room in violation of the previous directives.  Plaintiff was viewed again on January 22, 2018, going into the dormitory and was again instructed to leave the dormitory.  Based on the foregoing, and after reviewing video footage, Plaintiff was suspended on January 22, 2018 until further notice. Plaintiff agreed to her suspension pending an investigation into the matter by signing the Notice of Suspension. YOI denies Plaintiff's suspension was "abrupt," as alleged in the Complaint. YOI denies that Lynn Murdock played a role in the decision to suspend Plaintiff as Lynn Murdock had no such authority.  Any allegations in Paragraph 54 contrary to the foregoing are denied.

55.     The Plaintiff was not suspended by Defendant in January of 2018 due to her alleged PRN status and/or due to her not being needed to work.

**RESPONSE:**  Admitted.  Further answering, YOI states that prior to Plaintiff's January 22, 2018 suspension, she had received numerous written and oral warnings regarding absenteeism, tardiness, leaving early, improper dress, failure to maintain appropriate boundaries with a client, and other similar policy violations.  Due to repeated issues with tardiness, on May 31, 2017, Plaintiff was placed on a PRN status and was warned that she would be terminated if her conduct continued. While Plaintiff was not suspended in January 2018 because of her history of misconduct and repeated discipline, her history of misconduct and repeated discipline did factor into YOI's decision to not return Plaintiff from her suspension.

56.     The Plaintiff was not suspended by Defendant in January of 2018 for any other alleged disciplinary reason, such as tardiness or absenteeism.

**RESPONSE:** Admitted.  Further answering, YOI states that prior to Plaintiff's January 22, 2018 suspension, she had received numerous written and oral warnings regarding absenteeism, tardiness, leaving early, improper dress, failure to maintain appropriate boundaries with a client, and other similar policy violations.  Due to repeated issues with tardiness, on May 31, 2017,

Plaintiff was placed on a PRN status and was warned that she would be terminated if her conduct continued. While Plaintiff was not suspended in January 2018 because of her history of misconduct and repeated discipline, her history of misconduct and repeated discipline did factor into YOI's decision to not return Plaintiff from her suspension.

57.     On January 22, 2018, the Plaintiff was informed that she was suspended pending an "investigation" by DCS into allegations of inappropriate conduct between Plaintiff and one of the residents at the facility, "K.M."

**RESPONSE:** YOI admits that on January 22, 2018, Plaintiff was informed she was suspended pending an investigation into allegations she was inappropriate with a YOI client and insubordination for violating direct instructions from YOI to not enter the dormitories. Plaintiff agreed to this suspension pending the investigation by signing the Notice of Suspension. Any allegations in Paragraph 57 contrary to the foregoing are denied.

58.     The Plaintiff was suspended for a trumped-up reason because it was known in the facility that this was a false rumor that was spread by another resident, but the Plaintiff nevertheless said she would comply with the investigation and answer any questions that Defendant and/or DCS may have for her.

**RESPONSE:** Denied as specifically plead.

59.     Prior to her suspension, the Plaintiff was never interviewed or questioned in connection with the allegations regarding K.M.

**RESPONSE:** Denied.

60.     At the time Plaintiff was informed of her suspension, she was presented with a Notice of Suspension. (Notice of Suspension, attached hereto as Exhibit 1).

**RESPONSE:** YOI admits the allegations in Paragraph 60.

61.     According to the Notice of Suspension: "On January 17t[h] it was brought to the attention of the Assistant Facility Administrator that Ms. Valdez had allegedly been inappropriate with client KM." (Exh. 1).

**RESPONSE:** For answer to Paragraph 61, YOI avers that the Notice of Suspension speaks for itself, and therefore no response is required.

62.     At that time, the Assistant Facility Administrator was Jacob Austad.

**RESPONSE:** YOI admits the allegations in Paragraph 62.

63.     However, the Assistant Facility Administrator, Jacob Austad, never questioned or even mentioned to Plaintiff that there was a concern or allegation of inappropriateness regarding resident, K.M.

**RESPONSE:** Denied.

64.     The Defendant never interviewed or obtained a statement from the Plaintiff regarding these allegations.

**RESPONSE:** Denied.

65.     The Defendant never interviewed or obtained a statement from the resident, K.M., regarding these allegations.

**RESPONSE:** Denied.

66.     The Defendant never completed a report regarding the allegations of Plaintiff and resident, K.M.

**RESPONSE:** Denied.

67.     The Notice of Suspension asserts Plaintiff was suspended for alleged insubordination because she was allegedly "instructed to not go onto the dorm". (Exh. 1).

**RESPONSE:** For answer to Paragraph 67, YOI avers that the Notice of Suspension speaks for itself, and therefore no response is required.

68.     However, management employees, including the Assistant Facility Administrator, Jacob Austad, never "instructed" the Plaintiff to not go onto the dorm.

**RESPONSE:** Denied.

69.     The Notice of Suspension (Exh. 1) contained several falsehoods regarding the "Description of Incident Leading to Suspension" but it also represented that, once Plaintiff was cleared of the allegations, she would be permitted to return to work and she would be paid for the time she missed during the suspension.

**RESPONSE:** For answer to Paragraph 69, YOI denies the Notice of Suspension contains factual "falsehoods," as understood at the time YOI learned of the allegation. The contents of the Notice of Suspension speak for itself regarding the remaining allegations. Any allegations in Paragraph 69 contrary to the foregoing are denied.

70. For example, the Notice of Suspension states, in part: "If the employee is cleared of any such alleged violations and has not violated any other policy and procedure, the employee shall be reinstated with no loss of service and paid for this period of suspension". (Exh. 1).

**RESPONSE:** For answer to Paragraph 70, YOI avers that the Notice of Suspension speaks for itself, and therefore no response is required.

71. Therefore, the Plaintiff agreed to sign Notice of Suspension on January 22, 2018. (Exh. 1).

**RESPONSE:** For answer to Paragraph 71, YOI states that it has insufficient information to admit or deny why Plaintiff signed the Notice of Suspension and accordingly the allegation is denied and strict proof is demanded thereof.

72. At the time Plaintiff signed the Notice of Suspension (Exh. 1), she provided a handwritten response to the allegations against her.

**RESPONSE:** For answer to Paragraph 72, YOI admits that Plaintiff provided a handwritten statement which speaks for itself.

73. As stated in Plaintiff's handwritten response, she tried to stay out of the dorms, but it was difficult to serve food without assistance from the other employees because that meant Plaintiff had to place the food at the end of the dorms where the food would sit and get cold.

**RESPONSE:** For answer to Paragraph 73, YOI avers that the Notice of Suspension speaks for itself, and therefore no response is required.

74. In fact, the Plaintiff was previously written up and admonished by Defendant for serving cold food and not delivering the food directly to the residents' dorm.

**RESPONSE:** Denied.

75. The Clinical Director at the time, Dan Williams, made the decision to previously discipline the Plaintiff for serving cold food and not delivering the food directly to the residents' dorm.

**RESPONSE:** Denied.

76. If Plaintiff did not deliver warm food to the residents within the designated meal times, then the Plaintiff could be disciplined and even terminated.

**RESPONSE:** Denied.

77. Shortly after Plaintiff was suspended in January of 2018, Dan Williams became the acting Facility Director of Roane Academy.

**RESPONSE:** YOI admits the allegations in Paragraph 77.

78. As the acting Facility Director, Dan Williams was the highest authority at the Defendant's Roane Academy location.

**RESPONSE:** YOI admits the allegations in Paragraph 78.

79. On or before January 25, 2018, three (3) days after Plaintiff was suspended, the Business Manager, Lynn Murdock, was aware and/or had knowledge that another resident admitted to lying about the alleged inappropriate conduct involving resident, K.M. and Plaintiff.

**RESPONSE:** YOI has insufficient information to admit or deny the allegations of Paragraph 79 and accordingly, the same are denied and strict proof is demanded thereof.

80. On or before January 25, 2018, three (3) days after Plaintiff was suspended, the Clinical Director and/or acting-Facility Director, Dan Williams, was aware and/or had knowledge that another resident admitted to lying about the alleged inappropriate conduct involving resident, K.M. and Plaintiff.

**RESPONSE:** YOI has insufficient information to admit or deny the allegations of Paragraph 80 and accordingly, the same are denied and strict proof is demanded thereof.

81. On multiple occasions from January 22, 2018, forward, the Plaintiff contacted and/or attempted to contact the Defendant regarding the DCS investigation and her reinstatement to her former position, but Plaintiff was rebuffed, stonewalled, and/or ignored in response to her inquiries, and the Defendant refused to allow the Plaintiff to return to work.

**RESPONSE:** Denied.

82. After multiple initial requests to be returned to work, on February 7, 2018, Plaintiff called the Defendant's CEO in Indiana and a left a voicemail to ask for his assistance in returning her to work.

**RESPONSE:** Denied as specifically plead.

83. Later that day, on February 7, 2018, Plaintiff complained to the Regional Manager, Dallas Scott, about the Defendant's unfair treatment and refusal to return her to work, and Mr. Scott then suggested that Plaintiff contact DCS on her own to get an answer regarding the status of the investigation.

**RESPONSE:** Denied as specifically plead.

84.     On February 7, 2018, Plaintiff was informed by DCS that there was no case in the DCS database regarding her and/or the allegations involving resident, K.M.

**RESPONSE:** YOI is without sufficient information to admit or deny the allegations of

Paragraph 84 and accordingly, the same are denied and strict proof is demanded thereof.

85.     On or before February 7, 2018, the Defendant was aware and/or had knowledge that the Plaintiff was cleared by DCS as part of the investigation.

**RESPONSE:** YOI is without sufficient information to admit or deny the allegations of

Paragraph 85 and accordingly, the same are denied and strict proof is demanded thereof.

86.     Thereafter, on or about February 9, 2018, the Supervisor of the Investigations Unit for Roane County DCS also confirmed that Plaintiff was cleared as part of the investigation and that Defendant was aware of same.

**RESPONSE:** YOI is without sufficient information to admit or deny the allegations in

Paragraph 86, and accordingly, the same are denied and strict proof is demanded thereof.

87.     On February 9, 2018, the Plaintiff again informed Defendant that she was cleared as part of the DCS investigation.

**RESPONSE:** YOI is without sufficient information to admit or deny the allegations of

Paragraph 87, and accordingly, the same are denied and strict proof is demanded thereof.

88.     On February 9, 2018, the Plaintiff received a phone call from the acting Facility Director, Dan Williams, who was very rude and angry that Plaintiff had complained to the Regional Director, Dallas Scott.

**RESPONSE:** Denied.

89.     During the conversation on February 9, 2018, the acting Facility Director, Dan Williams, then ominously said that the Plaintiff was on "PRN status" and that the Defendant did not have to bring her back to work.

**RESPONSE:** Denied.

90.     During Plaintiffs employment with Defendant, however, Plaintiff worked regular full-time hours and she was not employed on an "as needed" basis.

**RESPONSE:** Denied.

91.     After the Plaintiff was suspended in January of 2018, the Defendant was aware of and/or had knowledge that Plaintiff was cleared by DCS as part of the investigation into Plaintiff and/or the resident, K.M.

**RESPONSE:** Denied.

92.     After the Plaintiff was suspended in January of 2018, the Defendant was aware of and/or had knowledge that Plaintiff was found to have engaged in no wrong-doing by the DCS investigation.

**RESPONSE:** Denied.

93.     On March 10, 2018, the Plaintiff requested for the Defendant to provide her Separation Notice.

**RESPONSE:** Denied.

94.     The Rules and Regulations of the Tennessee Department of Labor and Workforce Development, Separation Notices to be Furnished by the Employers, Chapter 0800-09-01-.02, states, in part:

**0800-09-01-.02 SEPARATION NOTICES TO BE FURNISHED BY THE EMPLOYERS.**
(1) Whenever a worker is separated from employment for an indefinite period or for an expected duration of seven (7) days or more, the worker's employer shall furnish to such worker a Separation Notice.
(a)     The employer must supply the worker with a Separation Notice within twenty-four (24) hours after the worker's separation from employment.
( )     The employer must use the Separation Notice supplied by the Department and the employer must complete the information required on the form.

**RESPONSE:** The allegations in Paragraph 94 are a legal conclusion to which no

response is required.

95.     After Plaintiff's termination up to the date of this filing, the Defendant never provided the Plaintiff with the Separation Notice as required by Tennessee Rule and Regulation, Chapter 0800-09-01-.02(1).

**RESPONSE:** Denied

96.     Since it became increasingly more clear and obvious that Plaintiff was not being brought back to work due to the Defendant continually stonewalling and rejecting Plaintiff's

efforts to return to work, even after she was cleared by the DCS investigation, the Plaintiff understood that Defendant considered her to be fired and no longer employed.

**RESPONSE:** YOI is without sufficient information to admit or deny what Plaintiff understood and accordingly the allegation is denied and strict proof is demanded thereof. The remaining allegations of Paragraph 96 are denied.

97.     As a result, on March 20, 2018, the Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). (Plaintiff s EEOC Charge, attached hereto as Exhibit 2).

**RESPONSE:** YOI admits that Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission on March 20, 2018.

98.     The Defendant received notice of Plaintiff's EEOC Charge (Exh. 2) on March 23, 2018.

**RESPONSE:** YOI admits it received notice of Plaintiff's EEOC Charge on March 23, 2018.

99.     After the Plaintiff was suspended in January of 2018, her position of Cook was initially replaced by a male employee.

**RESPONSE:** Denied.

100.     Thereafter, a female employee was moved into Plaintiff's former Cook position soon after the Plaintiff filed her Charge of Discrimination with the EEOC.

**RESPONSE:** Denied.

101.     It is the Defendant's position that the Plaintiff was not brought back to work after her suspension in January of 2018 due to Plaintiff's alleged PRN status and that she was not needed to work.

**RESPONSE:** Denied.

102.     The Plaintiff was not fired by Defendant due to any alleged tardiness or absenteeism.

**RESPONSE:** Denied.

103.     Throughout Plaintiff's employment, the Defendant misidentified and misclassified multiple employees as "PRN status" in order to avoid providing those employees with benefits and health insurance coverage.

**RESPONSE:** Denied.

104.    However, before the Plaintiff was suspended in January of 2018, the Plaintiff was working full-time, and approximately forty-seven (47) hours per week on average.

**RESPONSE:** For answer to Paragraph 104, YOI denies Plaintiff was working, on average, forty-seven (47) hours per week prior to her suspension. Plaintiff may have occasionally worked in excess of the amount PRN employees worked; however, any instance of this would have been an anomaly. Any allegations in Paragraph 104 to the contrary to the forgoing are denied.

105.    Before the Plaintiff was suspended in January of 2018, the Plaintiff was working full-time in the kitchen as a Cook, and she was also working every Saturday in Master Control.

**RESPONSE:** For answer to Paragraph 105, Defendant admits Plaintiff was working as a Cook and on Saturdays in Master Control. Any allegations in Paragraph 105 contrary to the foregoing are denied.

106.    Further, attached to the Notice of Suspension was an "Employee Data Sheet" for Plaintiff, which stated that she was employed as a "PRN Youth Counselor" working "Part-time" and her hours were "0-40" per week. (Exh. 1).

**RESPONSE:** For answer to Paragraph 106, YOI avers that the Notice of Suspension speaks for itself, and therefore no response is required.

107.    Despite terminating Plaintiff due to her allegedly no longer being needed for work at the Roane Academy facility, the Defendant subsequently sent a letter to Plaintiff on July 31, 2018, to "unconditionally" offer Plaintiff her "former position of Part Time Youth Care Worker". (Defendant's Offer of Employment, attached hereto as Exhibit 3).

**RESPONSE:** For answer to Paragraph 107, YOI states it declined to return Plaintiff from suspension due to her chronic history of disciplinary actions, and her repeated disregard of directives to not enter the dormitory and/or room in question, which in part led to the January 22, 2018 suspension. In essence, YOI decided it no longer needed to employ Plaintiff because of her work history and conduct. YOI also admits it sent a letter to Plaintiff on July 31, 2018 reoffering

her employment, which Plaintiff rejected. Any allegations in Paragraph 107 to the contrary are

denied.

108.    After the Plaintiff received Defendant's letter of July 31, 2018 (Exh. 3), the Plaintiff sought clarification as to the offer of employment.

**RESPONSE:** YOI admits the allegations in Paragraph 108.

109.    Thereafter, the Defendant represented that the offered position would be "full time" and Plaintiff would be "working at least 40 hours per week".

**RESPONSE:** YOI admits the allegations in Paragraph 109.

110.    Further, on August 22, 2018, the Defendant represented that the Plaintiff's schedule would be "first shift, Monday through Friday", but this was not true.

**RESPONSE:** Denied.

111.    The Defendant later explained that the Plaintiff's offered position had the following schedule:

> Monday -        6am-2pm
> Tuesday -       6am-2pm
> Wednesday -  Off
> Thursday -     Off
> Friday -          1 1 am-7pm
> Saturday -      11 am-7pm
> Sunday -        1 1 am-7pm

**RESPONSE:** YOI admits the allegations in Paragraph 111.

112.    The above schedule is not the same schedule that Plaintiff had before she was suspended by Defendant in January of 2018.

**RESPONSE:** YOI admits the allegations in Paragraph 112.

113.    As a result of the inconsistencies and misrepresentations, the Plaintiff ultimately declined the Defendant's offer of employment (Exh. 3) because it was not reasonable, as it was nothing more than a litigation tactic and/or to punish Plaintiff by returning her to much worse position and schedule that would not allow her to care for her children.

**RESPONSE:** YOI admits Plaintiff declined YOI's offer of employment. YOI denies the

remaining allegations in Paragraph 113.

114.    The Plaintiff was suspended, and eventually terminated, for a trumped-up reason.

**RESPONSE:** Denied.

115.    Further, other similarly-situated male employees engaged in the same, or worse, conduct than the Plaintiff but the male employees were not disciplined, suspended, or terminated.

**RESPONSE:** Denied.

116.    At all times material hereto, the Defendant would not hire a prospective employee who has been accused by a previous employer of engaging in inappropriate sexual activity with a minor.

**RESPONSE:** Admitted.

117.    Defendant is responsible and liable for the discriminatory actions of its agents and employees under the doctrine of respondent superior and under agency principles.

**RESPONSE:** Denied.

118.    The Plaintiff was discriminated against because of her sex in violation of Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.,* the Civil Rights Act of 1991, 42 U.S.C. § 1981a., and the Tennessee Human Rights Act, Tenn. Code Ann. §4-21-101, *et seq.*

**RESPONSE:** Denied.

119.    The Plaintiff received a Right to Sue Notice from the EEOC, dated November 30, 2018. (A true and exact copy of Plaintiff's Right to Sue Notice is attached hereto as Exhibit 4).

**RESPONSE:** For answer to Paragraph 119, YOI avers that the Right to Sue Notice speaks for itself, and therefore no response is required.

120.    Plaintiff's EEOC Charge was timely filed.

**RESPONSE:** For answer to Paragraph 120, Plaintiff's allegation that the EEOC charge is "timely" is a legal conclusion to which no response is required.

121.    This suit is timely filed.

**RESPONSE:** For answer to Paragraph 121, Plaintiff's allegation that this lawsuit is "timely" is a legal conclusion to which no response is required.

122.    As a proximate result of Defendant's conduct, Plaintiff incurred a loss of income and benefits, both past and future, other pecuniary losses, and she sustained and continues to sustain substantial emotional distress, humiliation, and embarrassment.

**RESPONSE:** Denied.

123.    The Defendant's conduct was a knowing violation and/or in reckless disregard of Plaintiff federally protected rights sufficient to justify the imposition of punitive damages.

**RESPONSE:** Denied.

In response to Plaintiff's prayer for relief, YOI denies that Plaintiff is entitled to any of the relief requested under any of the theories described, or to any other relief whatsoever.

Any allegations of the Complaint not previously admitted, explained, or denied are now hereby denied.

WHEREFORE, having fully answered, YOI respectfully requests:

1.    The Complaint be dismissed;

2.    That judgment be entered in favor of YOI;

3.    That all costs of this action be taxed to Plaintiff;

4.    That the Court order such other and further relief as it deems appropriate.

Respectfully submitted this 22nd day of March, 2019.

/s/ Edward G. Phillips
Edward G. Phillips, BPR #006147
Andrew M. Hale, BPR #036815
KRAMER RAYSON LLP
800 S. Gay Street, Suite 2500
Knoxville, TN 37929
(865) 525-5134
ephillips@kramer-rayson.com
ahale@kramer-rayson.com

***Attorneys for Defendant***

## CERTIFICATE OF SERVICE

I hereby certify that on March 22, 2019, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's electronic filing system.

/s/ Edward G. Phillips
Edward G. Phillips, BPR #006147